Chad M. Nicholson, ISB #7506
Joseph M. Wager, ISB #8445
McCONNELL WAGNER SYKES & STACEY ᴾᴸᴸᶜ
827 E. Park Blvd., Suite 201
Boise, Idaho 83702
Telephone:  208.489.0100
Facsimile:   208.489.0110
nicholson@mwsslawyers.com
wager@mwsslawyers.com

Attorneys For Plaintiff Danielle Dorsch

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIELLE DORSCH,<br><br>          Plaintiff,<br><br>     v.<br><br>STATE OF IDAHO DEPARTMENT OF FISH AND GAME,<br><br>          Defendant. | Case No.  1:17-cv-428-BLW<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOCKET NO. 15]** |

**COMES NOW** Plaintiff Danielle Dorsch, by and through her attorneys of record, McConnell Wagner Sykes & Stacey PLLC, and submits this Supplemental Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment.

**I.**

**INTRODUCTION**

This action is the result of the State of Idaho Department of Fish and Game's ("Department") systematic and intentional violations of Title VII of the Civil Rights Act of 1964

("Civil Rights Act") and the Idaho Human Rights Act ("IHRA"). The Department puts forth a time limitation argument to preclude Ms. Dorsch from proceeding with her claims of sex discrimination and retaliation. As demonstrated below, the Department's argument is based on an erroneous timeline.

Ms. Dorsch's claims of sex discrimination in the denial for transfer or promotion is evidence to substantiate the last actionable adverse act on December 10, 2015. The 2013 comments by Chris Jeszke are actionable under Ms. Dorsch's hostile work environment claims. Ms. Dorsch's retaliation claim is based on her being the **_only_** Department employee who was prohibited from obtaining audio recordings of evidence in support of discrimination/retaliation claims until January 1, 2016[1]. Ms. Dorsch's retaliation claim related to the November 30, 2014 to October 8, 2015 ("Fall 2015 Annual Review") is timely as a discrete act occurring on December 10, 2015. With respect to her claims arising under IHRA, Ms. Dorsch's retaliation claim related to the Fall 2015 Annual Review is actionable and timely as a discrete act. Therefore, Ms. Dorsch respectfully requests that this Court deny Defendant's Motion for Partial Summary Judgment ("PSJ Motion").

## II.

## STATEMENT OF FACTS

1.  Ms. Dorsch alleges, that during her employment with the Department, she was consistently denied opportunities for advancement and/or lateral transfers in favor of her male co-workers. (Dkt. 1, p. 5, ¶ 21-L).

---

[1] Ms. Dorsch alleged, in or about January 2016, the Department adopted a policy which expressly prohibits electronic recordings without the full knowledge and consent of all parties. [Dkt. 1, ¶ 19]. The Department's Answer admitted this allegation. Answer [Dkt. 5, ¶ 17]. For purposes of the arguments herein, Ms. Dorsch will utilize the date of January 1, 2016, i.e., the most favorable date to the Department.

2.  Ms. Dorsch was subjected to nine discriminatory acts between March 2010 and July 2015 when she applied for the lateral transfers and promotions.[2] (Dkt. 15-1).

3.  In 2013, Mr. Jeszke made comments directed to Ms. Dorsch regarding her being a "stay-at-home mom" and "percolat[ing] on the back burner."  (Dkt. 15-7) (*Jeszke Dec*. Ex A, pp. 2-3, 5, 14).  *See also Deposition of Christopher M. Jeszke* ("*Jeske Dep*.") at 75:21 – 76:3 attached as Ex. 4 to the *Declaration of Chad M. Nicholson in Support of Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment* ("*Nicholson Dec*."), filed concurrently herewith.  Ms. Dorsch "had a visceral reaction the first time [Mr. Jeszke] brought it up" and "became very, very upset."  *Jeszke Dep*. at 82:10-11 and 82:13.  *See also id*. at 83:20-22.  According to Mr. Jeszke, Ms. Dorsch "was obviously very offended[]" by, and "genuinely upset" by, the comment.  *Id*. at 84:12 & 85:11.

4.  Brandon Filloon began journaling her activities starting with her first day at the hatchery.  Further, his notes indicate that on October 21, 2014, he attempted to secretly record a conversation with Ms. Dorsch. (Dkt. 15-3) (*Filloon Dec*., Ex. A); *Deposition of Brandon Filloon* ("*Filloon Dep*.") at 49:9 – 50:8 attached as Ex. 2 to the *Nicholson Dec*.

5.  In February of 2015, Ms. Dorsch received an Achieves Performance Standards rating on her annual review.  (Dkt. 15-9) (*Engemann Dec*., Ex. A).

6.  The Confidential Investigation Report covering the Department's findings regarding Ms. Dorsch's hostile work environment claims was finalized on or about July 30, 2015. (Dkt. 15-13) (*Kane Affd*., Ex D).

---

[2] Ms. Dorsch's Complaint alleges other discriminatory acts which are not at issue for the purposes of the present Motion.

7. On August 6, 2015, Bryan Grant, Eastern Complex Manager, delivered the letter of understanding which prohibited Ms. Dorsch, and only Ms. Dorsch, from recording her conversations with other employees. (Dkt. 15-6) (*Grant Dec.*, Ex D). This prohibition was imposed on Ms. Dorsch because of, and as a result of, her providing recordings as part of the investigation into her claims of discrimination. *Deposition of Crystal Moerles* ("*Moerles Dep.*") at 43:23 – 44:20, attached as Ex. 5 to the *Nicholson Dec*. The Department has admitted that this directive prohibited Ms. Dorsch from making lawful recordings and prevented Ms. Dorsch from gathering evidence to substantiate a hostile work environment claim. *Moerles Dep*. at 46:2-15. *See also Deposition of Gary Byrne* ("*Byrne Dep.*") at 202:11-19 attached as Ex. 6 to the *Nicholson Dec*. Moreover, the Department agrees that preventing an employee from making a lawful recording has the effect of interfering with the employee's ability to gather evidence in support of a claim of discrimination. *Moerles Dep*. at 98:24 – 99:3.

8. No other employee of the Department was so directed notwithstanding that Brandon Filloon had secretly recorded Ms. Dorsch on October 21, 2014, and Bryan Grant had secretly recorded Ms. Dorsch on April 7, 2015. (Dkt. 15-4, p. 23) (*Filloon Dec.*, Ex A); *Filloon Dep*. at 49:9 – 50:8 and *Deposition of Bryan Grant* ("*Grant Dep.*") at 116:20 – 117:8 attached as Ex. 3 to the *Nicholson Dec*.

9. Mr. Engemann signed off on Ms. Dorsch's Fall 2015 Annual Review on October 29, 2015. (Dkt. 15-11, pp.3-4.) (*Engemann Dec.*, Ex D).

10. Ms. Dorsch signed the acknowledgement on the Fall 2015 Annual Review on October 27, 2015. *Id.*

11. The Fall 2015 Annual Review indicates that "Per Danielle's request, modifications were made on November 3, 2015." *Id*.

12. Ms. Dorsch utilized the Department's Problem-Solving Procedure on November 3, 2015 in attempt to controvert the proposed overall rating of "Does Not Achieve Performance Standards" ("DNA"). (*Declaration of Joseph M. Wager in Support of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* ("*Wager Dec.*"), Ex. A, IDFG-1015).

13. On November 19, 2015, Ms. Dorsch submitted a 15-page Response to Performance Evaluation Review articulating her allegations of retaliation and sex discrimination. (*Wager Dec.*, Ex. A, IDFG-1021-35).

14. On November 30, 2015, Jim Fredricks, Fishery Bureau Chief, issued his decision to "not revise performance rating, but amend performance appraisal...." (*Wager Dec.*, Ex. A, IDFG-1015-19).

15. On December 2, 2015, Ms. Dorsch, pursuant to the Problem-Solving Procedures, elected to escalate her concerns to Deputy Director Ed Schriever for review. (*Wager Dec.*, Ex. A, IDFG-1011-13).

16. On December 9, 2015, Ms. Dorsch was provided with Deputy Director Ed Schriever's one sentence concurrence with Jim Fredricks. (*Wager Dec.*, Ex. A, IDFG-1009).

17. On December 10, 2015, Crystal Moerles notified Ms. Dorsch via email that changes had been made to her Annual Evaluation, following the Problem-Solving Procedure to dispute the DNA rating, which finalized the document for the first time. (*Wager Dec.*, Ex. A, IDFG-1003).

18. On or about January 1, 2016[3], the Department issued a general policy prohibiting all employees from recording other employees without consent. (Dkt. 1, ¶ 19) (Dkt. 5, ¶ 17).

---

[3] The exact date of the enactment of this policy is unknown. For the purposes of this Motion, Plaintiff assumes the policy was effective as of January 1, 2016, the date most favorable to Defendant.

Employees of IDFG refer to this new policy as "the 'Danielle policy.'" *Jeszke Dep*. at 124:4-5.  It is understood that this policy was created because of Ms. Dorsch.  As explained by Mr. Jeszke:

> I've heard many people call it that[, the "Danielle policy"].  Bryan [Grant] has called it that. … But many people in the Department knew what was going on just through the rumor mill.  It's a very efficient machine.  And that was, Oh, man, that's the policy made because of Ms. Dorsch.  Don't have a policy made after you."

*Id*. at 124:7-13.

## III.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "material" if it affects the outcome of the litigation and may be considered "genuine" if it is established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)); *see also British Motor Car Distrib. v. San Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

The Supreme Court of the United States has made it clear that summary judgment under Rule 56 is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete [] failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

According to the United States Court of Appeals for the Ninth Circuit, to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence

> than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.
>
> *British Motor Car*, 882 F.2d at 374 (citation omitted). When applying this standard, the Court views all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

*Plucinski v. Payette Cty.*, 2018 U.S. Dist. LEXIS 43798 *27–29 (D. Idaho 2018).

## IV.

## ARGUMENT

As will be discussed herein, there are several independent bases upon which the Department's PSJ Motion must be denied.

### A.    Adverse Denial of Opportunity to Promote or Transfer

Ms. Dorsch asserts that during her employment with the Department she was consistently and repeatedly denied opportunities for advancement and/or lateral transfers in favor of her male co-workers. (Dkt. 1, p. 5, ¶ 21-L). Ms. Dorsch alleges that the Department deprived her of opportunities and adversely affected her employment because of her gender in violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq*. and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq*. (Dkt. 1, p. 6, ¶ 26).

The Department asserts that Ms. Dorsch's application and denial of nine (9) promotions and lateral transfers were discrete discriminatory acts between March 2010 and July 2015 that are time-barred. (Dkt. 15-2, P. 8-9). Ms. Dorsch is permitted to use the discrete discriminatory acts that may be time-barred as evidence in support of a timely claim. See *AMTRAK v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072 (2002). "Evidence of time-barred acts may be "offered for its probative value in assessing whether the employer's justifications for its present conduct lack credibility" and may also serve "as indirect proof of the employer's intent to discriminate."'" *Bagley*

*v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 800 (9th Cir. 2016) (Quoting *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002)).  The nine (9) denials of promotions/lateral transfers are discriminatory acts undoubtedly probative evidence to assess the Department's credibility and are indirect proof of the Department's gender discrimination against Ms. Dorsch.

While asserting that some of its discriminatory conduct is time-barred, the Department fails to acknowledge that genuine issues of material fact exist as to whether Ms. Dorsch was discriminated against on December 10, 2015 through the DNA rating – an act that put Ms. Dorsch "at a severe disadvantage" when applying for obtaining future promotions or transfers. *Byrne Dep*. at 101:9.

As part of Ms. Dorsch's Fall 2015 annual review, [4] Ms. Dorsch utilized the Department's Problem-Solving Procedure on November 3, 2015 to controvert the proposed overall rating of "Does Not Achieve Performance Standards" ("DNA"). *Wager Dec.*, Ex. A, IDFG-1015. On November 19, 2015, Ms. Dorsch submitted a 15-page Response to Performance Evaluation Review articulating her allegations of retaliation and sex discrimination. *Id*. at IDFG-1021-1035. On November 30, 2015, Jim Fredricks, Fishery Bureau Chief, issued his decision to "not revise performance rating." *Id*. at IDFG-1015-1019.  On December 2, 2015, Ms. Dorsch, pursuant to the Problem-Solving Procedures, elected to escalate her concerns to Deputy Director Ed Schriever for review. *Id*. at IDFG-1011-1013. On December 9, 2015, Ms. Dorsch was provided with Deputy Director Ed Schriever's one sentence concurrence with Jim Fredricks.  *Id*. at IDFG-1009. On December 10, 2015, Ms. Dorsch was notified that, after changes arising from the Problem-Solving Procedure, her Performance Evaluation was finalized, and she had no further recourse.  *Id*. at

---

[4] Ms. Dorsch addresses the timeline for her annual review for the period of 11/30/2014 to 10/08/2015 with more specificity in the retaliation subsection of this argument.

IDFG-1003.  This finalized Fall 2015 annual review with an overall rating of DNA precluded Ms. Dorsch from obtaining future transfers, promotions or pay increases from December 10, 2015 and the date of her constructive termination on March 26, 2016.  Summary judgment is properly denied as there are material facts to support Ms. Dorsch's allegations that on December 10, 2015, the Department adversely and indefinitely denied her the opportunity to apply for any advancement and/or lateral transfers making her September 20, 2016 administration charge of discrimination timely.

**B.** **"Stay-at-home mom", or "percolate" through a hostile work environment.**

The Department seeks to minimize the discriminatory and hostile statements by Mr. Jeszke by offering a contextual explanation as undisputed fact, and, confusingly, denying the existence of another in part.  Mr. Jeszke urged Ms. Dorsch to consider being a "stay-at-home mom" and advised that failure to adhere to discriminatory directive would result in her "percolat[ing] on the back burner[,]" *i.e.* not being promoted.  *Jeszke Dec*. Ex A, pp. 2-3, 5, 14.  These comments are part of an actionable hostile work environment claim.

> In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan*, 536 U.S. at 116-17, 122 S. Ct. at 2074 (citation omitted).

The Department contends that the "stay-at-home mom" comment is not an adverse action in and of itself and is nonetheless time barred. These comments are relevant not only as discriminatory acts but are part of the hostile work environment that Ms. Dorsch was thrust into at the Springfield Hatchery. Moreover, the transcript sets forth veiled references in context to unidentified persons of authority at the Department with subversive intent towards Ms. Dorsch, *inter alia*, "…I'm not at liberty to say who they are…", "…and again, I am not at liberty to discuss has these opinions.", "That could jeopardize my job because some of this was closed-door manager-type discussion. There's some people that do not take you seriously.", "I could probably lose my job for telling you that, so this stays here..." *Jeszke Dec*. Ex A. Mr. Jeszke explained that members of IDFG management "didn't take [Ms. Dorsch] seriously." *Jeszke Dep*. at 111:11.

When viewed in the light most favorable to Dorsch, Mr. Jeszke's comments, made with the benefit of his past experiences and in light of the "culture" that existed at the Department, are foretelling: that Ms. Dorsch was going to be put on the back burner to percolate for failing to go to the Grace Hatchery.

The Department erroneously asserts that the "percolate" comment is patently untrue.[5] A transcript of the recorded conversation clearly demonstrates that the comment was made. *Jeszke Dec*. Ex A, pp. 2-3, 5, 14. The Department vigorously attempts to impose its perspective of the comment as undisputed fact. *Kane Dec*. Ex. F, pp. 223-228. In doing so, the Department ignores that its own employee, Gary Byrne, acknowledged that Ms. Dorsch's interpretation of the

---

[5] With respect to the "percolate" comment, the Department can read clearly that Chris Jeszke made the comment, and the context and intent is a disputed question of fact.

comment as evidencing gender discrimination was "understandable." *See Wager Dec*. Ex. 1, IDFG-2074-2075. The notion that this "percolate" comment is patently untrue is disingenuous at best. Clearly, there is a genuine issue of material fact as to the meaning of Jeszke's comments and Dorsch's interpretation of those comments as discriminatory.

In the event that the Court determines that the specific "stay-at-home mom" event is non-compensable under a theory of discrete discrimination, presentation of those events is admissible to provide context for and evidence of Ms. Dorsch's claims which are not time barred.

### C.     **Prima Facie Retaliation**

Ms. Dorsch can make a prima facie retaliation claim, by demonstrating that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. "Protected activities include: (1) opposing an unlawful employment practice; and (2) participating in a statutorily authorized proceeding." The opposition clause protects employees who both subjectively and reasonably believe that they are opposing activity that violates Title VII." *Patterson v. State Dep't of Health & Welfare*, 151 Idaho 310, 318, 256 P.3d 718, 726 (2011) (citations omitted) (See *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1005 (9th Cir. 2002), *Little v. United Technologies Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).

#### 1.     **August 6, 2015 – Letter of Understanding**

The Department seeks to marginalize the protected activity in which Ms. Dorsch was engaging by stating that "[s]ecretly recording fellow employees is not engaging in a protected activity …." (Dkt. 15-1, p. 15.)  The protected activity in which Ms. Dorsch was engaged is the opposition of ongoing and systematic violations of Title VII, her method of opposition being the documentation of said prohibited conduct via audio recordings.

> Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that "this not only covers 'terms' and 'conditions' in the narrow sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment . . . in employment.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)). *Cf. Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (holding that for purposes of a Title VII retaliation claim, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity").

*Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1125 (9th Cir. 2000).

Ms. Dorsch advised the Department that she had recordings which supported her claim of discrimination. In response to the Department's request to provide the recordings, Ms. Dorsch provided multiple recordings to the Department in the belief that these recordings supported her claims. *Moerles Dep*. at 44:5-11. Upon conclusion of the investigation into her claims, the Department prohibited Ms. Dorsch, and only Ms. Dorsch, from making ***any*** recordings – including those that would support her claims of unlawful conduct. *Id*. at 44:12-18, 46:2-15 & 100:8-15. By prohibiting Ms. Dorsch, from recording her conversations, the Department took adverse action against Ms. Dorsch because of her good faith complaint of discrimination.

Courts may infer causation based on the "proximity in time between the protected action and the allegedly retaliatory employment decision…" *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003) (citing *Ray*, 217 F.3d at 1244 (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987))). The Confidential Investigation Report setting forth the Department's findings was finalized on or about July 30, 2015. Kane Dec, Ex D.  On August 6, 2015, Bryan Grant, Eastern Complex Manager, verbally and physically delivered the letter prohibiting Ms. Dorsch, and only Ms. Dorsch, from making future recordings. *Grant Dec.*, Ex D.; *Grant Dep*. at 101:7-8. This prohibition continued until Dorsch's employment was terminated.  No other employee of the

Department was so directed notwithstanding that Brandon Filloon had secretly recorded Ms. Dorsch on October 21, 2014, and Bryan Grant had secretly recorded Ms. Dorsch on April 7, 2015. *Filloon Dec*. Ex A. (Dkt. 15-4 p. 23.)

The Department asserts well-being and morale concerns as a basis for its development of a Department wide policy which prohibited recordings. However, it follows that these concerns were not relevant to the time period from August 6, 2015 to January 1, 2016. The Department did not make the system wide change in their employment policies until January 1, 2016. (Dkt. 1, ¶ 19, [Dkt. 5, ¶ 17). This August 6, 2015 letter implemented a specific policy directed only to Ms. Dorsch during a time period when she was being subjected to a systemic hostile work environment.

The Department cites to one recording to which Ms. Dorsch could not be heard on the tape. The Department's allegations of felonious conduct on the part of Ms. Dorsch is of no moment. This recording was instrumental in documenting not only hostile comments directed at Ms. Dorsch, but the subsequent denial of the occurrence by Doug Engemann. Mr. Engemann denied ever making a comment directed at Ms. Dorsch regarding a 200 Volt extension cord. Once Ms. Dorsch produced the tape to investigators, rather than admonishing him for making that comment and misleading the investigation, the Department apparently accepted Mr. Engemann's excuse of failing to recall the statement or what it meant. *See Deposition of Doug Engemann* ("*Engemann Dep*.") at 141-143 attached as Ex. 1 to the *Nicholson Dec*. The contents of the recording will be a question of fact for the jury to consider as the audio recording speaks for itself, and both Mr. Engemann, who did not recall making the comment, and Ms. Dorsch will provide their contextual understanding of the comment.

The Department erroneously asserts that this event is a discrete act. Discrete acts such as **termination**, **failure to promote**, **denial of transfer**, or **refusal to hire** are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *AMTRAK v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002) (citation omitted) (emphasis added). However, the letter of understanding is not a discrete act as articulated by the Court. The letter of understanding is more akin to a pattern of discrimination.

> "In *Bazemore* v. *Friday,* 478 U.S. 385, 92 L. Ed. 2d 315, 106 S. Ct. 3000 (1986) *(per curiam),* a pattern-or-practice case, when considering a discriminatory salary structure, the Court noted that although the salary discrimination began prior to the date that the act was actionable under Title VII, "each week's paycheck that delivered less to a black than to a similarly situated white is a wrong actionable under Title VII . . . ."

*Morgan*, 536 U.S. at 111-12, 122 S. Ct. at 2071 (2002).

Although the letter of understanding was provided to Ms. Dorsch on August 6, 2015, Ms. Dorsch was subjected to it every single day she remained employed by the Department, while her male counterparts at the Springfield Hatchery were free to record her as they deemed necessary. *Moerles Dep*. at 71:21-25. Therefore, each day that Ms. Dorsch remained employed by the Department she, and she alone, was specifically discriminated against and each day is actionable under Title VII.

The Department did not make the system wide change in their employment policies until January 1, 2016. (Dkt. 1, ¶ 19, [Dkt. 5, ¶ 17). This would be the first date that the Department could, in good faith, allege that Ms. Dorsch was not subject to discriminatory retaliation under the

guise of a system wide policy implementation.[6]  January 1, 2016 is 263 days prior to the date in which Ms. Dorsch filed her complaint with the Idaho Human Rights Commission on September 20, 2016.  Therefore, there is, at the very least, a genuine issue of material fact supporting Ms. Dorsch's timely allegations of retaliation against the Department in violation of Title VII.

2. **Fall 2015 Annual Review and the "Does Not Achieve" Rating.**

    a. *The claim of a retaliatory Fall 2015 Annual Review is not time barred under federal law.*

The Department alleges that on October 8, 2015 an adverse act occurred.  The Department's suggestion that this document is a date certain event is certainly a disputed question of fact.  If any date of an adverse act is applicable, it should be December 10, 2015.

While the review indicates that it was for a period that ended on October 8, 2016, there is nothing in the record to support that Ms. Dorsch was subjected to the terms of the Fall 2015 Annual Review on that date.  Mr. Engemann himself signed off on the review on October 29, 2015. *Engemann Dec*. Ex D. (Dkt. 15-11, pp.3-4.).  Ms. Dorsch signed the acknowledgement on the proposed Annual Review on October 27, 2015. *Id.* Further, the document indicates that 'Per Danielle's request, modifications were made on November 3, 2015." *Id.*   Ms. Dorsch utilized the Department's Problem-Solving Procedure on November 3, 2015. *Wager Dec.*, Ex. A, IDFG-1015. On November 19, 2015, Ms. Dorsch submitted a 15-page Response to Performance Evaluation Review articulating her allegations of retaliation and sex discrimination. *Id.* at IDFG-1021-1035. On November 30, 2015, Jim Fredricks, Fishery Bureau Chief, issued his decision to "not revise

---

[6] Ms. Dorsch does **_not_** concede that the enactment of a Department wide prohibition on recordings terminated the Departments discriminatory conduct.

performance rating, but amend performance appraisal...." *Id*. at IDFG-1015-1019. On December 2, 2015, Ms. Dorsch, pursuant to the Problem-Solving Procedures, elected to escalate her concerns to Deputy Director Ed Schriever for review. *Id*. at IDFG-1011-1013. On December 9, 2015, Ms. Dorsch was provided with Deputy Director Ed Schriever's one sentence concurrence with Jim Fredricks. *Id*. at IDFG-1009. On December 10, 2015, Crystal Moerles notified Ms. Dorsch via email that, as a result of the Problem-Solving Procedure, her review had been changed and finalized. *Id*. at IDFG-1003. Prior to this date, the Annual Review was not final and cannot be deemed a completed document.

There are no specific facts that indicate the date of October 8, 2015 is a discrete act, and the Court should disregard that date as one of significance. While the Department may certainly argue that any of the dates that are delineated on the document would lead to the conclusion that the claim is time barred under federal law, as demonstrated above, there exists a genuine issue of material fact as to the effective date of the DNA and whether the rating constitutes a discrete act. What is clear is that this Annual Review was finalized on December 10, 2015, 285 days prior to the date in which Ms. Dorsch filed her complaint with the Idaho Human Rights Commission on September 20, 2016. Therefore, Dorsch's claim of retaliation based on the Fall 2015 Annual Review DNA rating is not time barred. See *Morgan*, 536 U.S. at 116-17, 122 S. Ct. at 2074.

        b.     ***The claim of a retaliatory Fall 2015 Annual Review is actionable under state law.***

The Department relies on the unsubstantiated proposition that Ms. Dorsch is precluded from pursuing her claim of retaliation due to purported performance problems that predated the initiation of her claim for retaliation.

> An IHRA claim under section 67-5911 is commonly known as a retaliation claim. *Patterson v. State of Idaho, Dep't of Health & Welfare*, 151 Idaho 310, 318,

256 P.3d 718, 726 (2011). A prima facie retaliation claim requires a plaintiff to demonstrate that (1) he engaged in protected activity; (2) suffered an adverse employment action; and (3) there is a causal link between the two. *Id.* Opposing an unlawful employment practice is a protected activity. *Id.* (citing *EEOC v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1005 (9th Cir. 2002)); I.C. § 67-5911. *Mendez v. Univ. Health Servs. Boise State Univ.*, 163 Idaho 237, 409 P.3d 817, 824 (2018).

In *Mendez*, the Idaho Supreme Court held that the plaintiff failed to demonstrate a genuine issue of material fact because his bare assertions and conclusory statements that his firing was in retaliation for reporting discriminatory behavior did not negate ample facts in the record that his issues started before his protected conduct and continued throughout his tenure at University Health. 163 Idaho 237, 409 P.3d at 824 (2018).

This matter is distinguished from *Mendez* and the Department's assertion that the mere existence of "performance problems" entitles it to summary judgment is of no moment. Ms. Dorsch has directly refuted the "performance problems". There is sufficient substantiation from Ms. Dorsch that extend beyond bare assertions and conclusory statements. Ms. Dorsch has documented her Response to Performance Evaluation with a 15-page document offering specific objections and contrary evidence. *Id*. at IDFG-1021-1035.

The statements made by Chris Jeszke in 2013 are relevant given his reference to unidentified persons of authority at the Department, inter alia, "…I'm not at liberty to say who they are…", "…and again, I am not at liberty to discuss has these opinions.", "That could jeopardize my job because some of this was closed-door manager-type discussion. There's some people that do not take you seriously.", "I could probably lose my job for telling you that, so this stays here..." *Jeszke Dec*. Ex A. The comments within this statement demonstrate sufficient issues of material facts as to the employment practices within the Department.

Additionally, circumstantial evidence supports Ms. Dorsch's claim that her complex manager, manager, and assistant manager at Springfield Hatchery were setting her up from the day she arrived in February of 2014. Brandon Filloon began journaling her activities starting with her first day at the hatchery. *Filloon Dec*. Ex. A. *See also Filloon Dep*. at 18:3-14. This is a highly unusual practice for an employee to be subjected to on her first day at a new job. *See Jeszke Dep*. at 15:14-17, 20:9 – 21:23 and 22:8-12. Further, Mr. Filloon's notes indicate that on October 21, 2014, he attempted to secretly record a conversation with Ms. Dorsch. *Filloon Dep*. at 49:9 – 50:8. This immediate journaling is circumstantial evidence of abnormal behavior and inconsistent with standard practices in places of employment.

The proximity in time from the Confidential Investigation Report on or about July 30, 2015 and when Ms. Dorsch was advised of the investigation findings on August 4, 2015 to August 6, 2015, when Bryan Grant delivered the letter prohibiting Ms. Dorsch, and only Ms. Dorsch, from recording her conversations is evidence of discrimination. *Kane Dec*, Ex D. *Grant Dec*, Ex D. No other employee of the Department was so directed notwithstanding that Brandon Filloon had secretly recorded Ms. Dorsch on October 21, 2014, and Bryan Grant had secretly recorded Ms. Dorsch on April 7, 2015. *Filloon Dec*. Ex A. (Dkt. 15-4 p. 23.).

Ms. Dorsch's allegations are substantiated by sufficient material facts, not just bare assertions and conclusory statements. The only reasonable conclusion is that genuine issues of material fact exist to support Ms. Dorsch's claim that the Fall 2015 Annual Review is retaliatory.

///

///

///

///

## V.

## **CONCLUSION**

According to the arguments put forth herein, a genuine issue of material fact exists which precludes summary judgment. For the foregoing reasons, Ms. Dorsch respectfully requests this Court to deny Defendant's PSJ Motion in its entirety.

DATED this 30th day of November 2018.

                               MCCONNELL WAGNER SYKES & STACEY PLLC

                               By     */s/ Joseph M. Wager*
                                     Joseph M. Wager
                                     Attorneys For Plaintiff Danielle Dorsch

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 30th day of November 2018, a true and correct copy of the foregoing document was served by the method indicated below to the following parties:

| | |
|---|---|
| Michael Kane<br>Michael Kane & Associates, PLLC<br>Emerald Square Building<br>4355 W. Emerald Street, Suite 190<br>Boise, Idaho 83706<br>Telephone (208) 342-4545<br>*Attorney for Defendants* | [  ]   U.S. Mail<br>[  ]   Hand Delivered<br>[  ]   Facsimile (208) 342-2323<br>[  ]   Overnight Mail<br>[ X]   ECF Filing<br>[  ]  Electronic Mail |

                                                */s/ Joseph M. Wager*
                                                Joseph M. Wager